**Jane COE, Appellee,**

v.

**Lewis MELAHN, Director of the Department of Insurance; William L. Webster, Attorney General of the State of Missouri, Appellants.**

**No. 90–1552.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1991.

Decided March 2, 1992.

Michael L. Boicourt, Jefferson City, Mo., argued, for appellants.

Frank Susman, St. Louis, Mo., argued, for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

The district court struck down a Missouri statute regulating insurance coverage for elective abortions. The State of Missouri appeals, and we reverse and remand for further proceedings.

## I.

In 1983, the Missouri legislature enacted a statute requiring that no health insurance policy issued in the state cover elective abortions unless that coverage was provided via an optional rider, and with a separate premium. Mo.Rev.Stat. § 376.-805. The statute defines "elective abortion" as "an abortion for any reason other than a spontaneous abortion or to prevent the death of the female upon whom the abortion is performed." *Id.*

Jane Coe underwent an abortion after the statute took effect. The abortion was not spontaneous, nor was it performed in order to prevent her death. Her health insurer refused to pay for the procedure because she had not obtained elective abortion coverage under an optional rider.

Coe sued, challenging the constitutionality of the statute. The district court certified Coe as the representative of a class of women of childbearing age who wish to have access to insurance covering elective abortions without the restrictions imposed by section 376.805. Coe offered no evidence that insurance policies covering elective abortions were unavailable or prohibitively expensive. The parties did stipulate, however, that the cost of normal childbirth is significantly greater than the cost of a normal abortion.

Coe moved for summary judgment, asserting that the statute impermissibly infringes upon a woman's right to choose an abortion. Missouri argued that the statute was constitutional because it had a rational relationship to two legitimate interests: re-

ducing the cost of health insurance and protecting the interests of citizens who object to subsidizing abortions through payment of their insurance premiums. The district court reasoned that since an abortion is cheaper than childbirth, payment of insurance premiums for elective abortions subsidizes childbirth, not vice-versa. The district court therefore held the statute unconstitutional for lack of any relationship—rational or otherwise—to the interests advanced by the state.

## II.

In reviewing the district court's grant of summary judgment, we must first ascertain the appropriate degree of scrutiny to apply when determining the constitutionality of Missouri's statute. In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Court recognized a woman's right to choose an abortion. In both *Webster v. Reproductive Health Servs.,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), and *Hodgson v. Minnesota,* 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990), however, a majority of the Court refused to apply the trimester framework under *Roe v. Wade.* Yet no majority agreed on a single analytic framework to replace it.

■ Where a majority of the Court refuses to apply a legal standard, that standard ceases to be the law of the land. *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Where no majority emerges in support of any single new standard, "the controlling opinion ... is that of the Justice or Justices who concur on the " 'narrowest grounds.' " *Id.* at 193, 97 S.Ct. at 993.

In both *Webster* and *Hodgson,* Justice O'Connor wrote concurring opinions in which she applied an "undue burden" analysis. Under this approach, a reviewing court should apply strict scrutiny if a state's action unduly burdens the abortion decision. If a state's action imposes no undue burden, rational basis scrutiny would apply. *Webster,* 492 U.S. at 529–30, 109 S.Ct. at 3062–63 (O'Connor, J., concurring in part); *Hodgson,* 110 S.Ct. at 2949–

50 (O'Connor, J., concurring in part). Justice O'Connor's concurrence in *Webster* and on one issue in *Hodgson* was the narrowest ground for upholding the constitutionality of the statutes at issue because her undue burden approach would hold the fewest statutes constitutional. Similarly, her concurrence in striking down the other provision at issue in *Hodgson* constituted the narrowest ground for that majority because her approach would hold the fewest statutes unconstitutional.

■ We apply Justice O'Connor's undue burden analysis as the legal standard relevant to our review of Missouri's statute. Accordingly, the Missouri statute is constitutional if it does not impose an undue burden on a woman's abortion decision and if it rationally relates to some legitimate government purpose.

## III.

In *Akron v. Akron Center for Reproductive Health, Inc.,* Justice O'Connor applied the undue burden analysis to several abortion regulations, noting that "an 'undue burden' has been found for the most part in situations involving absolute obstacles or severe limitations on the abortion decision." 462 U.S. 416, 464, 103 S.Ct. 2481, 2510, 76 L.Ed.2d 687 (O'Connor, J., dissenting). Justice O'Connor found no undue burden in requiring that second trimester abortions be performed in hospitals, because there was no evidence that the regulation rendered abortions unavailable. *Id.* at 466–67, 103 S.Ct. at 2511–12. Justice O'Connor reached this result even though there was evidence that the regulation would more than double the cost of obtaining an abortion. *Akron,* 462 U.S. at 434–35, 103 S.Ct. at 2494–95. Likewise, Justice O'Connor found no undue burden in requiring a twenty-four hour waiting period. The increase in cost due to the regulation did not "unduly burden the availability of abortions or impose an absolute obstacle to access to abortions." *Id.* at 473, 103 S.Ct. at 2515–16 (O'Connor, J., dissenting).

As indicated earlier, Coe has introduced no evidence indicating that insurance poli-

cies covering elective abortions are unavailable or prohibitively expensive. Consequently, Coe has failed to show that the statute places an absolute obstacle or severe limitation on her abortion decision.

### IV.

■ Since Coe has shown no undue burden, we must next determine whether the statute rationally relates to some legitimate government purpose. Missouri argues that the statute reasonably furthers its interest in reducing the cost of insurance and in protecting the interests of citizens who object to subsidizing abortions through payment of their insurance premiums.

This case comes to us on a grant of summary judgment for the plaintiff. At this beginning stage of the proceedings, Coe did not make an adequate showing which entitled her to summary judgment. Accordingly, we must reverse the grant of summary judgment.

The summary judgment of the district court in favor of Coe is reversed and the case is remanded for further proceedings.